## CURRIER v. MIHALCIK.

(Fourth Division. Fairbanks. March 29, 1915.)

No. 2054.

TERRITORIES ⬅20—LEGISLATIVE LIMITATIONS—PROCESS—STATUTES —SUMMONS.

Congress provided in the act of June 6, 1900 (31 Stat. 339, c. 786, § 45), that summons in civil actions in Alaska "shall be served by the marshal or any deputy or by a person specially appointed by him or by the court or judge thereof." The Legislature of Alaska (Session Laws 1913, p. 29), amended that section by providing that summons might also be served "by any person over the age of twenty-one years who is competent to be a witness in the action." In the organic act (Aug. 24, 1912, c. 387, 37 Stat. 512), creating the Legislature, its powers were limited by Congress by a proviso in section 3 (U. S. Comp. St. 1916, § 3530): "And the Legislature shall pass no law depriving the judges and officers of the district court of Alaska of any authority, jurisdiction, or function exercised by like judges or officers of district courts of the United States." *Held*, the amendatory act of 1913, so passed by the Legislature of Alaska, is not in conflict with the organic act, and is valid.

(See Ivory, Adm'r, v. Nome Consol. Dredging Co., page ——, post, where the court in the Second division holds contrary.)

The complaint in the above-entitled action was filed in this court on the 4th day of September, 1914. Summons was duly issued by the clerk of the court, and thereafter, on the said 4th day of September, 1914, Robert E. Willis, designated as a

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

citizen of the United States over the age of 21 years, made the return on said summons, under oath, as provided in chapter 21 of the Session Laws of Alaska of 1913, page 29, which is as follows:

### Chapter 21.   (H. B. No. 51.)

An act to amend section forty-five of the Code of Civil Procedure for Alaska (Compiled Laws of Alaska, Sec. 877).

Be it enacted by the Legislature of the Territory of Alaska:

Section 1. That section forty-five of title two, chapter four of the act of June 6, 1900, entitled "An act making further provision for a civil government for Alaska and for other purposes," be amended to read as follows:

Sec. 45. *Summons—Who to Serve, and When Returnable.*—That summons shall be served by the marshal, or any deputy marshal, or by any person over the age of twenty-one years who is competent to be a witness in the action, other than the plaintiff, or by a person specially appointed by the marshal or by the court or judge thereof. The summons shall be returned to the court or the clerk thereof with whom the complaint is filed, within forty days after its delivery to the officer or other person with proof of such service, or that the defendant cannot be found. The marshal or other person to whom the summons is delivered shall indorse thereon the date of such delivery: Provided, however, that the return by any person other than an officer shall be by affidavit of the person making such service endorsed thereon.

Approved April 21, 1913.

Thereafter on the 3d day of October, 1914, the defendant filed a motion to quash summons, in which motion it is contended that the said Robert E. Willis had no power or authority to serve said summons for the following reasons:

(1) That the act of the territorial Legislature of Alaska designated as chapter 21, approved April 21, 1913, and entitled "An act to amend section 45 of the Code of Civil Procedure for Alaska (Compiled Laws of Alaska, sec. 877)," which purports to empower any person over the age of 21 years, who is competent to be a witness in said action, other than the plaintiff, to serve summons, is null and void, for the reason that the subject of said pretended law is not expressed in its title, contrary to the provisions of the act of Congress approved August 24, 1912, entitled "An act to create a legislative assembly in the territory of Alaska, to confer legislative power thereon and for other purposes."

(2) That said act of said territorial Legislature, designated as chapter 21, approved April 21, 1913, and entitled "An act to amend section 45 of the Code of Civil Procedure for Alaska (Compiled Laws of Alaska, Sec. 877)," which purports to empower any person over the age of 21 years, who is competent to be a witness in the action, other

than the plaintiff, to serve a summons, is null and void, for the reason that said Alaska Legislature had no power to pass said legislation, and said act was contrary to the express provisions of section 3 of the Organic Act creating a Legislature for the territory of Alaska, and defining its duties, and particularly with that portion thereof, which provides as follows:

"And the Legislature shall pass no law depriving the judge and the officers of the district court of Alaska of any authority, jurisdiction or function exercised by like judges or other officers of District Courts of the United States."

The convention for the cession of the Russian possessions in North America to the United States was concluded at Washington March 30, 1867. Ratifications were soon completed, and on June 20, 1867, the treaty was proclaimed.

On the 5th of March, 1872, the custom laws were extended over Alaska, and certain authority was given to the Secretary of the Treasury in the matter of leasing the islands of St. Paul and St. George.

An act entitled "An act providing a civil government for Alaska" was passed by Congress May 17, 1884 (23 Stat. 24, c. 53), in which act the general laws of the state of Oregon in force were declared to be the law in Alaska in so far as they might be applicable and not in conflict with the provisions of the act of May 17, 1884, or the laws of the United States.

On May 14, 1898, Congress approved an act entitled "An act extending the homestead laws and providing for right of way for railroads in the district of Alaska, and for other purposes." 30 Stat. 409, c. 299.

The act of Congress of March 3, 1899 (30 Stat. 1253, c. 429), provides a Criminal Code and a Code of Criminal Procedure, title I and title II, respectively. The act of June 6, 1900 (31 Stat. 321, c. 786) entitled "An act making further provision for a civil government for Alaska, and for other purposes," makes provision for the establishment of the executive and judicial departments, under title I. Title II provides a Code of Civil Procedure, and title III constitutes the Civil Code for the territory.

During the year 1900 Thomas H. Carter, of Montana, caused to be published what is commonly known as "Carter's Annotated Alaska Codes," covering the subject-matter of the acts of Congress of March 3, 1899, and of June 6, 1900, above mentioned. For convenience the work is divided into "the Penal

Code, consisting of 13 chapters, the Code of Criminal Procedure, consisting of 44 chapters, the Political Code, consisting of 1 chapter, the Code of Civil Procedure, consisting of 101 chapters, and the Civil Code, consisting of 36 chapters." This publication was not authorized by act of Congress, and must therefore be designated as a private code.

By the act of Congress of August 24, 1912, entitled "An act to create a legislative assembly in the Territory of Alaska, to confer legislative power thereon, and for other purposes" (37 Stat. 512, c. 387), it is provided in section 19 of said act as follows:

"Sec. 19. That the committee on territories of the Senate and the committee on territories of the House of Representatives are hereby authorized, empowered, and directed to jointly codify, compile, publish, and annotate all the laws of the United States applicable to the territory of Alaska, and said committees are jointly authorized to employ such assistance as may be necessary for that purpose; and the sum of five thousand dollars, or so much thereof as may be necessary, is hereby appropriated, out of any money in the treasury not otherwise appropriated, to cover the expenses of said work, which shall be paid upon vouchers properly signed and approved by the chairmen of said committee."

By virtue of the authority conferred in section 19 of said act, the joint committee on territories of the Senate and House of Representatives compiled, codified, arranged, annotated, and published all the laws of the United States applicable to the territory of Alaska enacted by Congress prior to the Sixty-Third Congress, and entitled the same "The Compiled Laws of the Territory of Alaska, 1912." (Title page gives date as 1913. This should be 1912.)

The preliminary chapters of this compilation consist of the "Preface, Declaration of Independence, Constitution of the United States, The Treaty of Cession, and Decision of Alaska Boundary Tribunal." The compilation is subdivided into 16 appropriate titles, containing in all 2,590 sections.

This, briefly stated, is a history of legislation by Congress for Alaska.

The first territorial Legislature for the territory of Alaska convened at Juneau, Alaska, on the 3d day of March, 1913, and adjourned May 1, 1913. During this period 84 bills were passed by the Legislature. These constitute the Session Laws of Alaska of 1913. Of these 59 are the subject of new legisla-

tion, 2 purport to repeal certain laws heretofore existing, 21 by their tenor are amendatory, and 2 seek to amend by "adding to" certain sections designated.

Chapter 56 of the said Session Laws of 1913 is as follows:

Chapter 56. (S. B. No. 62) An act to make uniform any reference to or citation of the Compiled Laws of the territory of Alaska.

Be it enacted by the Legislature of the territory of Alaska:

Section 1. That it shall be valid and sufficient to make reference to any citation of "The Compiled Laws of the Territory of Alaska 1912, compiled, codified, arranged, and annotated, and published under authority of the Act of Congress of August 24, 1912, by the Joint Committee on Territories of the Senate and House of Representatives," by the following title, to wit: "Compiled Laws of Alaska."

Approved April 28, 1913.

Pratt & Pratt, of Centerville, Ala., for plaintiff.

McGowan & Clark, of Fairbanks, for defendant.

BUNNELL, District Judge. It is urged in the motion to quash summons that the title of chapter 21, page 29, of Session Laws of Alaska 1913, is null and void. The title is "An act to amend section forty-five of the Code of Civil Procedure for Alaska (Compiled Laws of Alaska, Sec. 877)."

Section 8 of the Organic Act, entitled "An act to create a legislative assembly in the territory of Alaska, to confer legislative power thereon, and for other purposes," is as follows:

"Sec. 8. *Enacting Clause—Subject of Act.*—That the enacting clause of all laws passed by the Legislature shall be 'Be it enacted by the Legislature of the Territory of Alaska.' No law shall embrace more than one subject, which shall be expressed in its title." U. S. Comp. St. 1916, § 3535.

The territorial Legislature, in fixing a title for chapter 21 of the Session Laws, referred to a certain section of a private compilation, and an authorized compilation.

In the case of State v. Berka, 20 Neb. 375, 30 N. W. 268, where the question arose of designating title by reference to a section of an authorized compilation, it is stated:

"This compilation was made by authority of law, under the provisions of the act of February 26, 1881 (see Comp. St. 1881, §§ 529, 530), and, when made, became as much the law of this state as though made directly by the Legislature itself. It reduced the laws of the state into one compact body, and became its own evidence of the correctness of its contents, without 'further proof or authentication.'

It was therefore competent for the Legislature, in amending any of its provisions, to refer to them as therein contained, without in any way referring to the original acts of which it was composed. This question was before this court in Dogge v. State, 17 Neb. 140, 22 N. W. Rep. 348, and it was there held, as stated in the syllabus and opinion written by the present Chief Justice, that, 'in amending an act, it may be designated by its title or chapter in the Compiled Statutes.' We adhere to the rule there stated."

In 33 Neb. 812, 51 N. W. 287, In re White, it is stated in the syllabus:

"The Compiled Statutes, having been published under authority of law, and being supposed to contain all the laws in force at the date of publication, may be amended by a proper reference thereto; and, if the amendatory act clearly points out the portion of the statute amended, the objection that the amendment is of the Compiled Statutes will be unavailing."

In Lewis v. Dunne, 55 L. R. A. 842, in the notes under subject of "Amendment," subtitle "Sufficiency of Title," many citations are made supporting the validity of entitling by reference. Introductory to the citations holding to the contrary, it is stated:

"The cases hold, almost without exception, that a title purporting to amend a specified section of a Code or other compilation of laws, without further designating the subject-matter, is sufficient, and most of the few cases to the contrary, it will be seen, can no longer be held as law, even in the jurisdictions where they were rendered."

Of similar import are the following: State v. Jones, 9 Idaho, 693, 75 Pac. 819; Heller v. People, 2 Colo. App. 459, 31 Pac. 773; Steele v. Erskine et al., 98 Fed. 215, 39 C. C. A. 173; Marston v. Humes, 3 Wash. 267, 28 Pac. 520; Simon v. Northrup, 27 Or. 487, 40 Pac. 560, 30 L. R. A. 171.

The general rule is set forth in 36 Cyc. page 1058, F, "Title of Amendatory Act":

"The title of an amendatory act must indicate the subject of the amendment by reference to the act or title of the act to be amended or the substance thereof."

The private compilation by Carter simply gives subjects to the respective titles of the act of March 3, 1899, and the act of June 6, 1900. This question would not have arisen, had the Legislature designated the titles of amendatory acts by reference to the respective sections of the respective titles, instead of to the subject given to the title in the private compilation. But,

in addition to the reference to the subject given to a title and the section thereof, reference is made parenthetically to an authorized compilation.

For a period of 13 years prior to the convening of the first territorial Legislature at Juneau, "Carter's Code" had been used generally by the bar in Alaska. It was an accepted compilation. The "Alaska Reports" mention and refer to Carter's Code in a majority of the cases reported. The name is not unfamiliar to the Ninth Circuit Court of Appeals, nor to the Supreme Court of the United States.

"An act to amend section forty-five of the Code of Civil Procedure for Alaska (Compiled Laws of Alaska, Sec. 877)" may not seem entirely appropriate to a severe critic; however, it contains the required elements of sufficiency, and is therefore held to be a clear designation by reference to the section of the statute intended to be amended.

II. Coming now to the second point raised by defendant's motion to quash summons as set forth in paragraph IV thereof, hereinbefore stated, the last sentence of section 3 of the Organic Act is as follows:

"And the Legislature shall pass no laws depriving the judges and officers of the district court of Alaska of any authority, jurisdiction, or function exercised by like judges or officers of District Courts of the United States."

Section 877, Compiled Laws of Alaska, prior to amendment by the first territorial Legislature, stated:

"The summons shall be served by the marshal or any deputy or by a person specially appointed by him or by the court or judge thereof. The summons shall be returned to the court or clerk thereof with whom the complaint is filed within forty days after its delivery to the officer or other person for service, with proof of such service or that the defendant cannot be found. The marshal or other person to whom the summons is delivered shall endorse thereon the date of such delivery."

As amended it reads as follows:

"That summons shall be served by the marshal, or any deputy marshal or by any person over the age of twenty-one years who is competent to be a witness in the action, other than the plaintiff, or by a person specially appointed by the marshal or by the court or judge thereof. The summons shall be returned to the court or the clerk thereof with whom the complaint is filed, within forty days after its delivery to the officer or other person with proof of such service, or that the defendant cannot be found. The marshal or other person

5 A.R.—17

to whom the summons is delivered shall indorse thereon the date of such delivery: Provided, however, that the return by any person other than an officer shall be by affidavit of the person making such service indorsed thereon."

Provision is therefore made by amendment, so that summons may be served by any person over the age of 21 years, competent to be a witness in the action, other than the plaintiff, provided that the return of such person shall be by affidavit of the person making the service.

If the amendment made by the territorial Legislature is repugnant to the last sentence of section 3 of the Organic Act, defendant's motion to quash summons must prevail.

The three following definitions of "summons" from volume 7, page 6787, Words and Phrases Judicially Defined, are sufficient to generally determine what is intended by the term:

"A summons is not a process, but merely a notice given by the plaintiff's attorney to the defendant that proceedings have been instituted, and that judgment therein will be taken against him if he fails to answer.

"A summons is a notice to bring a party into court; but if the summons is never issued or served, and yet the party voluntarily comes into court and tries the case, neither he nor the adverse party can be heard to say that the judgment is void, or even voidable.

"A summons is the paper which gives jurisdiction to the court over the person of the party brought in."

Cyc. vol. 39, p. 804, states that:

"A United States marshal is a ministerial officer pertaining to the organization of the federal judicial system, whose duties are similar to those of a sheriff."

Cyc. vol. 31, p. 1153, defines "practice" in law to be:

"The mode of proceeding by which a legal right is enforced; that which regulates the formal steps in an action or other judicial proceeding; the course of procedure in courts; the form, manner, and order in which proceedings have been and are accustomed to be had; the form, manner, and order of conduction and carrying on suits or prosecutions in the courts through their various stages; according to the principles of law, and the rules laid down by the respective courts."

And in volume 32, page 405, of the same work, "procedure" is defined to be:

"A general term including pleadings, process, evidence, and practice—in fact, every step that may be taken from the beginning to the end of a case."

The Supreme Court of the United States in the case of United States v. Wigger, 235 U. S. 276, 35 Sup. Ct. 42, 59 L. Ed. 226, on appeal from this court, where the question was raised as to the authority of the territorial Legislature to amend section 2152 of the Compiled Laws of Alaska, which reads, "That the indictment must charge but one crime, and in one form only; except that where the crime may be committed by use of different means the indictment may allege the means in the alternative," to read, "When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offens- es, which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated" (Rev. St. U. S. § 1024 [U. S. Comp. St. 1916, § 1690]), states in the opinion:

"As already remarked, legislative power was first conferred upon the territory by the act of August 24, 1912 (37 Stat. 512, c. 387). From the provisions of this act, 'That all the laws of the United States heretofore passed, establishing the executive and judicial departments in Alaska, shall continue in full force and effect until amended or repealed by act of Congress,' the District Court, after a review of the other legislation to which attention has been called, drew the conclusion that the laws concerning procedure in actions prosecuted in the name of the United States and by its officers are an essential and integral part of the laws establishing the executive and judicial departments, and that therefore these can be amended or repealed only by act of Congress. With this view we are unable to concur. It seems to us that, by the language employed, Congress intended to draw a clear distinction between those laws by which the executive and judicial departments had been established in the territory and those minor regulations that had to do with practice and procedure. Those enactments by which Congress had provided for the appointment of executive and judicial officers for the territory, and had marked out the powers, authority, and jurisdiction of each, and provided safeguards for their maintenance, are properly within the category of laws 'establishing' those departments. These laws, and not those merely regulating the procedure, were by the act of 1912 continued in force until amended or repealed by act of Congress."

It does not appear that the United States marshal, by the amendment as above set forth, has been deprived of any author-

ity, jurisdiction, or function. He stands as an officer of the court to perform such services as may be required of him by virtue of his office. The territorial Legislature amended a section of the statute making it possible for the plaintiff in an action to secure service of summons by one other than the United States marshal. It appears to the court to be one of those minor regulations having to do with practice and procedure within the scope of authority of the territorial Legislature under and by virtue of the act to create a legislative assembly in the territory of Alaska, to confer legislative power therein, and for other purposes.

The motion to quash summons is therefore denied, and the defendant is given ten days within which to answer.