IN RE CONTEMPT OF EVERETT SILEVEN.
STATE OF NEBRASKA EX REL. PAUL L. DOUGLAS ET AL.,
APPELLEES, V. FAITH BAPTIST CHURCH OF LOUISVILLE,
NEBRASKA, ET AL., APPELLANTS.

361 N.W.2d 189

Filed January 4, 1985.   No. 84-375.

Charles E. Craze of Gibbs & Craze Co., and Owen Giles, for contemner Sileven.

Ronald D. Moravec, Cass County Attorney, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

On September 11, 1979, the district court for Cass County enjoined the defendants from operating a private school until such time as they complied with the Nebraska statutes and rules and regulations of the State Department of Education governing the approval of schools. That injunction order was affirmed by this court. *State ex rel. Douglas v. Faith Baptist Church*, 207 Neb. 802, 301 N.W.2d 571 (1981), *appeal dismissed* 454 U.S. 803, 102 S. Ct. 75, 70 L. Ed. 2d 72.

Ronald D. Moravec, the county attorney of Cass County and one of the parties in this action, filed a motion on October 27, 1983, seeking a citation of Everett Sileven for willful contempt of court for violation of the order of injunction. A bench warrant was issued for the arrest of Sileven to appear and answer a charge of civil contempt. The contemner finally did appear, and, following various hearings which were concluded on April 26, 1984, the court found the contemner to be in "willful contempt" of the court. It then ordered him to be confined in the Cass County jail for a period of 8 months. In doing so the court stated: "The previous sanction in this case is a punitive sanction and was four months. The sanction I impose today is eight months."

The only suggestion by the court of any conditions attached to the jail sentence was that if Sileven furnished proof in the next week or so that all of the children of the Faith Christian School were to be enrolled in an approved school, and if he furnished a $10,000 bond, he would be released from jail until September 1, at which time he would be required to reenter jail to serve the balance of his term. Additionally, if the Faith Christian School was then in compliance with the laws and regulations, the court would approve a work release program. However, at a later date during the hearing on a motion for a new trial, the court, in referring to those conditions, stated: "[B]ut it was in no means meant to purge Mr. Sileven of the punitive sanctions."

In his appeal Sileven assigns as error that his constitutional right to notice was violated in that he was informed that he was to answer a charge of civil contempt, whereas he was adjudged guilty of criminal contempt, and that the court incorrectly found that he was guilty of willful disobedience when in fact his sincerely held religious beliefs made it impossible to comply with the injunctive order.

At the outset it is necessary that we deal with the appellee's challenge to the jurisdiction of the court. He insists that the contempt was civil in nature because the sanction imposed was coercive in nature. A coercive sanction arises out of a civil contempt, is not final in nature, and is not appealable. A punitive sanction takes on the nature of a final order. It stems from a criminal contempt and is appealable. *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984).

However, we disagree with the appellee's characterization of these proceedings. The "sentence" imposed was final and absolute and without conditions.

> In the coercive sanction . . . the contemner holds the keys to his jail cell, in that the sentence is conditioned upon his continued noncompliance. The punitive sanction is much like the sentence in a criminal case, in that it is absolute and not subject to mitigation if the contemner alters his future conduct toward the court . . . .

*Liles, supra* at 534, 344 N.W.2d at 628-29.

If the sentence is limited to imprisonment for a definite

period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. . Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.

*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442-43, 31 S. Ct. 492, 55 L. Ed. 797 (1911).

Criminal contempt . . . is punitive . . . serves to vindicate the authority of the court, and cannot be ended by any act of the contemnor. . . . [W]e conclude that the order before us is criminal. The order imposes an unconditional fine . . . . It does not permit appellant to purge itself and remove the sanction by compliance with the court's . . . order. The contemnor does not "carr[y] the keys of his prison in his own pocket," and therefore the fine "operates not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience."

(Citations omitted.) *Southern Railway Company v. Lanham*, 403 F.2d 119, 124-25 (5th Cir. 1968).

We conclude that although the contempt proceedings were noticed as a civil contempt, may very well have been intended as a civil contempt, and were conducted as a civil contempt, in that the contemner was not advised of his rights against self-incrimination, the sanction imposed was very definitely criminal in nature. It was a final, appealable order. This disposes of the jurisdictional challenge and we can move on to the contemner's initial assignment of error.

A sentence in a prosecution for contempt, except that committed in open court, which is wholly punitive, may properly be imposed only in proceedings instituted and tried as for criminal contempt. In such proceedings the accused is entitled to due process of law and is presumed to be innocent, cannot be compelled to testify against himself or herself, and must be advised of the nature of the charges. *Cooke v. United States*, 267 U.S. 517, 45 S. Ct. 390, 86 L. Ed. 767 (1925); *Gompers v. Bucks Stove & Range Co., supra.* A criminal sanction is invalid if imposed in a proceeding that is instituted and tried as a civil contempt. *Southern Railway Company v. Lanham, supra.*

Although our conclusions set forth above require a reversal of this case, we will address briefly the contemner's second assignment of error.

Neb. Rev. Stat. § 25-2121 (Reissue 1979) authorizes the prosecution for criminal contempt of any person guilty of willful disobedience of any lawful order of a court. Although this court has not ruled on the meaning of willfulness as used in that statute, it has said the word "willful" as used in Neb. Rev. Stat. § 83-184 (Reissue 1981), making a willful failure to return to custody a crime, meant only intentional, not accidental or involuntary. *State v. Gascoigen*, 191 Neb. 15, 213 N.W.2d 452 (1973). And in *State v. Coca*, 216 Neb. 76, 341 N.W.2d 606 (1983), we held that the term "intentional" was synonymous with willful in proving the defendant was intentionally possessing marijuana. "Intentionally means 'willfully' or 'purposely,' and not accidentally or involuntarily." *Id.* at 81, 341 N.W.2d at 610.

Similarly, in other jurisdictions where willfulness is an essential element of contempt, the courts have defined it to mean a deliberate or intimidating violation, as opposed to accidental or inadvertent, *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983), or a volitional act done by one who knows or should have known that his conduct is wrongful. *United States v. Baker*, 641 F.2d 1311 (9th Cir. 1981).

Taken together, it appears "willful" means the violation was committed intentionally, with knowledge that the act was in violation of the court order. The record fully supports the conclusion that Sileven knew he was violating the court's order and that he chose to intentionally violate it. The fact that he felt he found a reason in the form of his conscience does not detract from the fact that he acted "willfully."

Further, as this court pointed out in *Sileven v. Tesch*, 212 Neb. 880, 326 N.W.2d 850 (1982), sincerely held beliefs are insufficient to justify continually flouting the law.

> It is Sileven's choice to continue violating the lawful orders of the court which has resulted in his being held in contempt of court. We specifically found that the state's right to regulate schools, including the Faith Baptist

Church school, was a reasonable regulation and did not impose an unreasonable burden upon Sileven's religious beliefs, nor violate his first or ninth amendment rights. Sileven is simply wrong if he believes that he may consistently and continually flout the law by merely declaring that it is contrary to his religious beliefs, no matter how sincerely held. The extent to which the state must set aside its laws in order to accommodate religious beliefs is not to be determined, under our form of government, by the individual but, rather, by the court; and once this is determined by the court, as it has been in this matter, it may not be ignored or rejected by the individual without subjecting the individual to appropriate penalties.

*Id.* at 886, 326 N.W.2d at 853-54.

The contemner's second assignment of error is without merit.

However, for the reasons set forth above, it is necessary to reverse the judgment of the district court.

Consequently, a criminal sanction is invalid if imposed in proceedings that are instituted and tried as a civil contempt. . . . The usual procedure is to reverse the citation for contempt and remand it to the trial court in order that a proper civil penalty can be imposed or in order that a criminal proceeding can be conducted.

*Southern Railway Company v. Lanham*, 403 F.2d 119, 125 (5th Cir. 1968). This is the procedure which we order to be followed here.

The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.